IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DEIRDRE WILLIAMSON JAIN** and )<br>**EMILY RUTH WILLIAMSON**, Individually, )<br>And as Co-Administrators of the Estate of )<br>Joseph Seth Williamson, II, Deceased, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>**ABBOTT LABORATORIES, INC.**, )<br>**ABBOTT LABORATORIES**, and )<br>**HOSPIRA, INC.** )<br>**Defendants.** ) | Civil Action No. 7:13-CV-551 |

## REPORT AND RECOMMENDATION

Defendants have moved to exclude Plaintiffs' expert witness, Jonathan L. Arden, M.D. ("Arden"), on the ground that Plaintiffs failed to disclose his opinions in a timely manner as required under the court's amended pre-trial order. Dkt. No. 49. Having considered the oral arguments of counsel, the pleadings filed, and the applicable law, I **RECOMMEND** that the motion be **DENIED**.

### Factual Background and Procedural History

Plaintiffs filed this wrongful death action asserting that their decedent, Joseph Seth Williamson, II, died from an overdose of Dilaudid (hydromorphone) administered through Defendants' PCA pump. The parties' joint discovery plan prepared pursuant to Rule 26(f) required Plaintiffs to disclose their experts no later than June 30, 2014, and for Defendants to disclose experts no later than July 30, 2014. Dkt. No. 18. The parties' discovery plan was silent regarding rebuttal experts. The court's pre-trial order allowed, however, "supplemental and additional disclosures . . . if submitted in sufficient time that discovery, if desired, can be

completed reasonably by the discovery cutoff date without undue duplication and expense." Dkt. No. 13.

Plaintiffs timely disclosed the expert for their case in chief, Dr. Robert C. Morell, on June 27, 2014. Dkt. No. 50. Dr. Morell, who is a board certified anesthesiologist, prepared a report giving the opinions that (1) Mr. Williamson died from an excessive dosage of Dilaudid administered through a PCA pump; (2) the combination of the excessive dosage of Dilaudid and his significant sleep apnea caused a decreased oxygen saturation in the blood and hypercarbia, which led to respiratory and eventual cardiac arrest; and (3) Mr. Williamson's death "was directly caused by the administration of excessive doses of Dilaudid secondary to the error in the programming of the drug concentration in the pump. He did not die from natural causes."

Defendants timely disclosed their expert witness, Dr. David R. Fowler, MB, ChB., M.Med. Path, on July 30, 2014. Dkt. No. 50. Dr. Fowler also prepared a report with the opinions that (1) toxicology tests showed that Mr. Williamson had a level of Dilaudid in his blood within the accepted therapeutic range; (2) a Dilaudid overdose would have caused certain side effects which Mr. Williamson did not experience; (3) Mr. Williamson had significant other life-threatening disease processes; (4) no medical evidence suggested that Mr. Williamson died from a Dilaudid overdose; and (5) Mr. Williamson died from his underlying cardiovascular disease.

On September 2, 2014, Plaintiffs disclosed "supplemental" expert Dr. Jonathan L. Arden. Dkt. No. 50. Dr. Arden is a forensic pathologist who offers the opinion that (1) Mr. Williamson's death was causally related to the administration of an excessive dosage of hydromorphone; (2) Mr. Williamson was morbidly obese, had sleep apnea, and had significant cardiovascular disease, but did not die from these natural disease processes; (3) the excessive

2

dosage of Dilaudid caused respiratory depression and complications with the sleep apnea, which led to respiratory arrest and death; (4) Mr. Williamson self-administered bolus doses of Dilaudid, which would have increased the blood concentration level of Dilaudid above what was detected in the blood stream after death; and (5) because the primary cause of death was the excessive administration of Dilaudid, "the manner of death is accident."

Defendants move to exclude Dr. Arden as being disclosed untimely on the basis that all of plaintiffs' experts were to be disclosed by June 30, 2014, that the opinions of Dr. Arden are not supplemental or additional to Dr. Morell, and that the opinions are not rebuttal in response to new, surprise, or unexpected opinions from the defense experts. In fact, Defendants argue that the autopsy report concluded that Mr. Williamson died from "complications of hypertensive and atherosclerotic cardiovascular disease." Dkt. No. 50. Plaintiffs offer Dr. Arden as a rebuttal expert to respond directly to the opinions of Dr. Fowler. Dr. Arden is a forensic pathologist and has the same field of expertise as Dr. Fowler. Plaintiffs acknowledged during oral argument that they would not call Dr. Arden during their case in chief and only would call him on rebuttal if Dr. Fowler testifies at trial.

## Discussion

Rebuttal expert testimony[1] is evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(b)(2)(D)(ii). A party

---

[1] Dr. Arden's report cannot reasonably be considered a supplemental report permitted under the pre-trial order. The Federal Rules and the court's pre-trial order permit, and in fact, require, seasonable supplementation. That duty, however, does not open the door to submit a new opinion from a different expert.
> Supplementation of an expert report permits a party to correct inadvertent errors or omissions. Supplementation, however, is not a license to amend an expert report to avoid summary judgment. See, e.g., Beller ex rel. Beller v. United States, 221 F.R.D. 696, 701 (D.N.M. 2003) ("[Rule 26(e)] does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report ...." (quotation omitted)); . . . Courts distinguish "true supplementation" (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by "supplementing" an expert report with a "new and improved" expert report. See, e.g.,

3

may not, however, offer testimony as "rebuttal" simply as a means of providing additional support for the case in chief. In Re Bard, Inc., 2013 WL 2432861 at *1 (S.D.W. Va. 2013). Generally, the Fourth Circuit permits rebuttal evidence only to counter new facts presented during the defendant's case in chief, such as responding to evidence unavailable earlier through no fault of the plaintiff. See Allen v. Prince George's Cnty, Md., 737 F.2d 1299, 1305 (4th Cir. 1984). "The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." Braun v. Lorillard, Inc. 84 F.3d 230, 237 (7th Cir. 1996).

Dr. Arden's report is not proper rebuttal. None of the opinions in Dr. Fowler's report are new, create a surprise, or spring from information not previously available. The autopsy report, completed within four months of Mr. Williamson's death, concluded that Mr. Williamson died from complications relating to his atherosclerotic cardiovascular disease and further that the concentration of Dilaudid in the blood stream fell within the accepted therapeutic level. Specifically, the autopsy report stated

> The documentation of the concentration of the dose (1mg/mL) and amount given by the pump (14mL) is not consistent with the toxicology results and the blood levels of hydromorphone do not explain any excess dispensing by the pump or missing hydromorphone. The blood levels are more consistent with those expected for an individual given 2-3 mg of hydromorphone, not 14 mg. There is no toxicology or autopsy evidence of overdose.

Dkt. No. 50.

The autopsy findings are consistent with the opinions of Dr. Fowler and directly contradict the expected testimony of Dr. Morell that Mr. Williamson "did not die from natural causes." Dkt. No. 50. Dr. Arden's expected testimony simply supports the opinions of Dr.

---

MicroStrategy, Inc. v. Business Objects, S.A., 429 F.3d 1344, 1353 (Fed. Cir. 2005); Solaia Tech., LLC v. ArvinMeritor, Inc., 361 F. Supp. 2d 797, 806 (N.D. Ill. 2005).
Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624, 630-31 (E.D.N.C. 2008).

4

Morell that the excessive administration of Dilaudid combined with Mr. Williamson's sleep apnea to cause respiratory and eventual cardiac arrest. Dr. Arden's provision of greater detail in his opinions and direct address of the toxicology reports that the Dilaudid level was in the therapeutic range do not make this a rebuttal report. Rather, those opinions are germane to a critical issue on which Plaintiffs carry the burden of proof – the manner and cause of death. Dr. Arden's opinions simply provide additional support for Plaintiff's case in chief and are not rebuttal opinions. Consequently, I conclude that Plaintiffs were required to disclose Dr. Arden's opinions and report by June 30, 2014 as required by Rule 26(a) and the pre-trial discovery plan. Having failed to do so, the disclosure of Dr. Arden is untimely.

Unless their failure to disclose was substantially justified or harmless, Plaintiffs may not call Dr. Arden to testify at trial because they failed to comply with Rule 26(a) and the pre-trial discovery plan and they failed to disclose the opinions in a timely fashion. Fed. R. Civ. P. 37(c)(1). Under Federal Rule of Civil Procedure 37(c)(1),

> "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) ... the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, *unless the failure was substantially justified or is harmless.*" Fed. R. Civ. P. 37(c)(1) (emphasis added); see Hoyle v. Freightliner, LLC, 650 F.3d 321, 329 (4th Cir. 2011). The five factors I must consider to determine whether the failure was substantially justified or is harmless are:
>
>> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.
>
> Hoyle, 650 F.3d at 329 (quoting S. States Rack & Fixture v. Sherwin–Williams Co., 318 F.3d 592, 596 (4th Cir. 2003)).

In re C.R. Bard, Inc., MDL 2187, 2013 WL 2432861 (S.D.W. Va. June 4, 2013).

5

Given the current state of discovery in this action, the analysis of these factors mitigate in favor of allowing Dr. Arden to testify at trial. Plaintiffs explain that they retained Dr. Arden, a forensic pathologist, to respond to Dr. Fowler, who is also a forensic pathologist. Plaintiffs do not expect to call Dr. Arden in their case in chief, and simply wanted his testimony as an expert in the same field as Defendant's expert. I do not find this a persuasive explanation for why Plaintiffs chose not to identify Dr. Arden earlier. The other factors, however, tilt in Plaintiffs' favor. Defendants realistically face no surprise from the testimony of Dr. Arden, who will address the specific issues relating to the cause of death and inter-relationship between Mr. Williamson's co-morbid conditions of sleep apnea, obesity, and cardiovascular disease and the administration of Dilaudid. Plaintiffs disclosed Dr. Arden in sufficient time to take his deposition before the discovery cut-off. The court also will accommodate the schedules of the parties and Dr. Arden, if necessary, by amending the discovery completion date to allow the deposition of Dr. Arden to proceed. Defendants have not sought leave or suggested that they need to have Dr. Fowler supplement his report or provide additional opinions to respond specifically to Dr. Arden's expected testimony. The late development of this expert testimony will not impact any dispositive motions which Defendants may file or intend to file. The cause of Mr. Williamson's death is a material fact in sharp dispute, and there is adequate time for the full and complete discovery of all expert opinions as to that issue.

Finally, this testimony cuts to the heart of an issue on which Plaintiffs carry the burden of proof. That is, Plaintiffs must establish a proximate cause between the excessive administration of Dilaudid and Mr. Williamson's death. It is always preferable to have civil disputes resolved on their merits rather than have evidence excluded from consideration for procedural reasons.

6

This is especially so where the court, in the exercise of its discretion, can accommodate the parties to allow the fulsome production of evidence on the merits to the fact finder.

### Conclusion

For the foregoing reasons, I hereby **RECOMMEND** that Defendants' Motion to Exclude Dr. Arden be **DENIED**.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: October 8, 2014

/s/ *Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge